# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| EXPERT JANITORIAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-CV-338 |
| ) | |
| CAPITAL CONTRACTING OF BUFFALO, ) | Judge Phillips |
| ROBERT DOEL, and TERRY BURNS, ) | |
| ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action for damages resulting from violation of restrictive covenants in a services contract. Plaintiff and defendants executed an Independent Service Provider Agreement which provided that defendants would not directly or indirectly solicit, provide services to, or interfere in any way with any customer being serviced by plaintiff. Plaintiff alleges that defendants have violated their contractual obligations by soliciting and misappropriating plaintiff's customers. Plaintiff alleges causes of action for (1) breach of contract; and (2) tortious interference with contract and prospective economic advantage. Plaintiff seeks compensatory damages; punitive damages, attorneys' fees, costs and litigation expenses; and a permanent injunction against defendants enforcing the non-solicitation and covenant not to compete provisions of the parties' agreement; actual

damages in the amount of $166,000; and treble damages as provided by Tenn. Code Ann. § 47-50-109.

Plaintiff filed this action against defendants on July 18, 2011. Summonses for defendants were returned executed, and the returns show that personal service was made on defendant Capital Contracting of Buffalo on July 30, 2011; on defendant Robert Doel on July 30, 2011; and on defendant Terry Burns on August 10, 2011. Defendants failed to file an answer or otherwise respond to plaintiff's complaint, and plaintiff filed a motion for entry of default on September 20, 2011. Pursuant to Federal Rule of Civil Procedure 55(a), a default was entered by the clerk against defendants on October 3, 2011. Plaintiff filed the instant motion for default judgment, with supporting memorandum and affidavits, on May 4, 2012. Pursuant to Federal Rule of Civil Procedure 55(b)(2), the court entered an order of default against defendants on November 9, 2012.

An evidentiary hearing was held on January 14, 2013 to determine plaintiff's damages. Phillip Pacey, Chief Financial Officer of Expert Janitorial, was the only witness at the evidentiary hearing. Following the hearing, plaintiff submitted the affidavits of Phillip Pacey, Celeste Herbert, and John Pueschel in support of plaintiff's claims for damages and for attorney's fees. Having heard the testimony at trial, and having reviewed the record in this case, the following are the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

2

## Findings of Fact

1. Rule 55(b) of the Federal Rules of Civil Procedure allows the court to grant default judgment after an entry of default has been obtained. FRCP 55(b). The allegations of plaintiff's complaint are deemed true due to the entry of default. *In re Family Resorts of America, Inc.*, 1992 WL 174539 (6th Cir. July 24, 1992).

2. Plaintiff, Expert Janitorial LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Knoxville, Tennessee. Defendant Capital Contractors of Buffalo, is a New York sole proprietorship located in Buffalo, New York. Defendant Robert Doel, the sole proprietor of Capital Contractors of Buffalo, is a resident of Lockport, New York. Defendant Terry Burns is a citizen and resident of Amherst, New York. Burns is an employee or contractor of Capital.

3. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional amount of $75,000. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to plaintiff's claims occurred within this district; defendants caused tortious injuries to a Tennessee business in this district; and because all defendants consented to venue in this court in their respective agreements with Expert.

4. Since January 2006, Expert has provided janitorial contract services throughout the United States to retail customers. In order to provide these services, Expert contracts with local independent service providers.

5. On June 24, 2009, Capital and Robert Doel executed an Independent Service Provider Agreement (ISP) with Expert, which provided, among other things, that Capital and Doel would not directly or indirectly solicit, provide services to, or interfere in any way with any customer being serviced by Expert. In addition to signing the ISP agreement on behalf of Capital, Doel also personally guaranteed the performance of Capital, and agreed that, as a guarantor, Doel would be liable for any damages, costs and expenses, including reasonable attorneys' fees, which Expert may recover as a result of Capital's breach of the ISP agreement.

6. Pursuant to Paragraph 21 of the ISP agreement, Capital and Doel consented to personal jurisdiction in the state or federal courts of Knox County, Tennessee. Pursuant to Paragraph 21, Capital and Doel also agreed that any dispute as to the performance or interpretation of the ISP agreement would be governed by the laws of the State of Tennessee.

7. To protect Expert's legitimate business interests and customer relationships, Capital and Doel agreed to reasonable restrictions limiting Capital's and Doel's competitive activities after the termination of the ISP agreement. Specifically at Paragraph 20(b), the ISP agreement required that:

> During the period beginning on the Effective Date of this Agreement and ending on the later of (1) the second anniversary of the date of termination of this Agreement, or (2) when services are no longer being performed by EXPERT JMS for any customer for whom Service Provider performed Services during the Term of this Agreement (the "restricted period"), Service Provider shall not, directly or indirectly, in any business capacity, whether as a contractor, owner, stockholder, partner, joint venturer, employer, employee,

> director, officer, consultant, agent or otherwise, solicit, acquire, provide services to (except pursuant to this Agreement) or interfere in any way with any Customer that either (i) is then being serviced by EXPERT JMS or (ii) had a location serviced by EXPERT JMS at any time during the Term of this Agreement that was situated within a one hundred (100) mile radius or any other Customer location at which Service Provider performed Services during the Term of this Agreement. Service Provider further agrees that if such Customer is or was part of a Chain (as defined below), Service Provider's obligations under this paragraph shall apply to all stores within a one hundred (100) mile radius for such Chain in each and every district, area or zone where any stores are being serviced or were serviced by EXPERT JMS at any time during the Restricted Period. In addition, Service Provider will not directly or indirectly, solicit or hire (or cause to be hired) any employee, independent contractor, or consultant of EXPERT JMS or its Customers to become an employee, consultant, or independent contractor to or for any person or entity.

Paragraph 20(c) of the ISP agreement defines "Chain" as "any Expert customer account having five or more locations."

8. Pursuant to the ISP Agreement, Capital provided services for Expert's customers at locations in New York including PriceRite stores. For these services, Capital and Doel received compensation and benefits.

9. PriceRite is a retail grocery chain with stores located in the northeastern United States, including the State of New York. PriceRite stores in New York have utilized Expert's services since September 2008. Expert initially provided services to two PriceRite stores in Rochester, New York. Thereafter, through substantial effort and expense, Expert expanded the relationship and increased its services to PriceRite. As of May 25, 2011, Expert served six of PriceRite's stores located in Rochester, Buffalo, and

5

Cheektowaga, New York. PriceRite is an Expert Customer and a Chain under the terms of the ISP Agreement.

10. Throughout the United States, Expert employs District Managers to build and maintain customer relations, interact with customers, and generally oversee the quality of services provided to Expert's customers by the company's ISPs. The District Managers have a direct customer relationship with, and provide feedback from the customer to the ISP regarding the services rendered. District Managers also have access to confidential information such as pricing and marketing plans.

11. Defendant Terry Burns was hired as a District Manager in New York on November 23, 2008. Due to the level of customer involvement and access to competitively sensitive information, Burns was required to sign a Proprietary Information and Restrictive Covenants Agreement with Expert. The Burns' agreement states at Paragraph 5:

> I agree that for the period of my employment by the Company and for two (2) years after the date my employment by the Company ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, either directly or through others, (i) solicit or hire (or cause to be hired) any employee, independent contractor or consultant of the Company to become an employee, consultant, or independent contractor to or for any other person or entity, or (ii) solicit any customers of the Company with whom I had contact or learned confidential information about as a result of my employment with the Company for a Competitive Purpose. For purposes of this Agreement, "Competitive Purpose" shall mean the provision of any or all of the following janitorial related services: full service floor washing, carpet cleaning, window washing, power washing, special event janitorial services, construction clean-up, remediation or restoration cleaning, temporary staffing of

6

janitorial personnel, and twenty-four hour emergency janitorial services.

The Burns' agreement defines "customer" as " any person or entity to which the Company has provided goods or services at any time during the period commencing six months prior to my employment with the Company and ending on the date my employment with the Company ends."

12. Pursuant to paragraph 11.21 of the Burns' agreement, Burns agreed that any dispute as to the performance or interpretation of the Burns' agreement would be governed by the laws of the State of Tennessee. Burns further agreed that any action arising from, or relating to, the enforcement of the Burns' agreement exclusively "shall be in the United States District Court in Tennessee or in any court for the State of Tennessee sitting in Knoxville, Tennessee."

13. During Burns' employment with Expert, he was responsible for managing Expert's relationship with PriceRite stores in New York. PriceRite is a Customer of Expert's under the terms of the Burns' agreement. By May 2011, the services provided by Expert at PriceRite generated approximately $290,000 in revenue annually, and Expert expected that future services for the existing stores and additional opportunities for services to PriceRite would generate more in revenue annually.

14. Expert terminated its Agreement with Capital and Doel in February or March 2010. Burns' employment with Expert was terminated on May 7, 2010. Thereafter, Burns, Capital and Doel began working together to further the business interests of defendants to the detriment of Expert. Very shortly after his termination, during the

7

Summer of 2010, Burns, who was then no longer employed by Expert, approached Tony Monte, District Manager of the PriceRite stores then serviced by Expert, and stated that PriceRite should no longer utilize Expert's services. Instead, Burns indicated that PriceRite should receive its floor care services from Burns and Doel, through Capital Contracting. Burns' solicitation of PriceRite, which had been an Expert customer at the time of Burns' termination, and remained an Expert customer as of the time of his improper solicitation, was in direct violation of the Burns' agreement and was to further the competitive business of Capital and Doel.

15. On May 25, 2011, with no prior notice or warning, PriceRite notified Expert that Expert's services were terminated at six PriceRite stores. Immediately thereafter, the six PriceRite stores retained the services of Capital and Doel to provide their janitorial services. After Expert's services were terminated, Doel contacted the ISPs who were providing services for the PriceRite account, and solicited them to breach their contracts with Expert and instead perform work for Capital and Doel. As of July 18, 2011, Doel, Capital, and Burns were providing all of the services to PriceRite that had previously been provided by Expert.

16. Expert had a reasonable expectation that servicing chains such as PriceRite would continue, and in fact, that it would expand. Defendants knew of these existing contractual relations and prospective business opportunities. Defendants have wrongfully used their knowledge of Expert's customers and other confidential and proprietary business information belonging to Expert to divert customers away from Expert for the benefit of defendants.

17. Capital and Doel have violated the ISP agreement by providing services to customers of Expert for whom Capital and Doel provided services during the term of the ISP agreement. Capital and Doel have also violated the ISP agreement by retaining Burns' services as an employee, consultant, or independent contractor, and encouraging or allowing him to solicit Expert's customers on behalf of Capital and Doel.

18. Burns has violated his agreement with Expert by improperly soliciting Expert's customers with whom he had contact and about whom he gained confidential and proprietary information during the period of his employment with Expert.

19. Defendants have also interfered and continue to willfully interfere with Expert's contractual relations and prospective business opportunities with Expert's customers. Defendants' actions were without justification, and have been done willfully and with reckless disregard to Expert's rights.

20. Expert has suffered, and will continue to suffer, damages as a result of Capital's and Doel's breach of the ISP agreement. Expert has suffered, and will continue to suffer, damages as a result of Burns' breach of his agreement with Expert. As a result of defendants' wrongful conduct, Expert has suffered damages which include lost customers, lost profits, and lost goodwill. On May 25, 2011, PriceRite notified Expert that Expert's services were terminated. At that time, the services provided to PriceRite by Expert generated approximately $290,000 in revenue and $83,000 in profits annually. Expert reasonably expected the relationship between PriceRite and Expert to continue and to grow. In early 2011, Expert was asked to submit a quote for servicing PriceRite's new location in Baltimore. In addition, Expert's leadership team discussed expanding the

relationship with PriceRite beyond New York. Expert is entitled to recover actual and consequential damages, as well as equitable relief. Further, as a result of defendants' willful, malicious and reckless conduct, Expert is entitled to exemplary damages.

## Conclusions of Law

21. Plaintiff moves for a default judgment against defendants for breach of contract, and tortious interference with contract and prospective economic advantage, and requests actual and consequential damages, punitive and/or exemplary damages, attorneys' fees and costs.

22. A party asserting a breach of contract claim in Tennessee must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of contract. *C&W Asset Acquisition LLC v. Oggs*, 230 S.W.3d 671, 767-77 (Tenn.Ct.App. 2007). Based on the record in this case, the court finds that the ISP agreement executed by Capital and Doel is a valid and binding contract supported by adequate consideration; the non-solicitation provisions contained in the ISP agreement are valid and enforceable under Tennessee law; and Capital and Doel have violated the ISP agreement by providing services to customers of Expert for whom Capital and Doel provided services during the term of the ISP agreement. Moreover, Capital and Doel have violated the ISP agreement by retaining the services of Burns as an employee, consultant, or independent contractor, and encouraging or allowing him to solicit Expert's customers on behalf of Capital and Doel. Further, the court finds that Expert has suffered damages as a result of Capital's and Doel's breach of the ISP

10

agreement. Therefore, the court finds that Expert is entitled to recover actual and consequential damages from Capital and Doel.

23. Next, the court finds that the Burns' agreement is a valid and binding contract supported by adequate consideration; the non-solicitation provisions contained in the covenants of the Burns' agreement are valid and enforceable under Tennessee law; and Burns has violated the Burns' agreement by improperly soliciting Expert's customers with whom he had contact and about whom he gained confidential information during the period of his employment with Expert. Further, the court finds that Expert has suffered damages as a result of Burns' breach of the Burns' agreement. Therefore, the court finds that Expert is entitled to recover actual and consequential damages from Burns.

24. Tennessee law recognizes a statutory cause of action for procurement of breach of contract as well as a common law cause of action for tortious interference with contract. *Cambio Health Solutions, LLC v. Reardon*, 2007 WL 627834, *3 (6th Cir. Feb. 27, 2007). The two claims share the same elements: (1) the existence of a legal contract; (2) the defendant's knowledge of the contract; (3) the defendant's intent to induce a breach of the contract; (4) malice on the part of the defendant; (5) breach of the contract; (6) proximate causation; and (7) injury to the plaintiff. *Id.* Treble damages are available for the statutory claim under Tenn. Code Ann. § 47-50-109, and are a substitute for punitive damages under common law. *See Polk & Sullivan*, 783 S.W.2d 538, 542 (Tenn. 1989). Under the statute, a person procuring or inducing a breach of contract "shall be liable in treble the amount of damages resulting from or incident to the breach of contract." *Id.*

11

Case 3:11-cv-00338-TWP-CCS   Document 18   Filed 06/05/13   Page 11 of 15   PageID #: 166

These damages must be proved by clear and convincing evidence. *Continental Motel Brokers, Inc. v. Blankenship*, 739 F.2d 226, 229 (6th Cir. 1984).

25. Here, the clear evidence shows that Expert had existing contractual relations and prospective business opportunities with PriceRite. Expert had been doing business with PriceRite for a significant length of time. PriceRite was a "chain" as defined in the ISP agreement, and Expert served six locations in New York. Expert had a reasonable expectation that this business with PriceRite would continue, and in fact, that it would expand. All of the defendants in this case were bound by contracts, both individually and as a corporation, to not solicit Expert's customers. Doel and Burns formed the leadership team of Capital, and maliciously and intentionally chose to violate the terms of their agreements and actively pursue a current client of Expert. This was done without any legal justification, which constitutes malice. "[U]nlike the level of malice ordinarily required for punitive damages under Tennessee law, malice in the context of an inducement of breach claim does not require ill will or spite toward the injured party. It only requires the intentional commission of a harmful act without justifiable cause." *Freeman Management Corp. v. Shurgard Storage Centers, LLC,* 461 F.Supp.2d 629, 639 (M.D.Tenn. 2006). Through defendant's actions, Expert lost the business of PriceRite's chain of grocery stores and lost good will. The court finds that defendants wrongfully used the confidential and proprietary business information belonging to Expert to divert PriceRite stores away from Expert for the benefit of defendants. Defendants have willfully and maliciously interfered with Expert's contractual relations and prospective business opportunities with Expert's customer PriceRite.

12

26. Under the Burns' agreement, for a period of two years after his termination, Burns agreed not to solicit customers of Expert. Under the ISP agreement, Doel and Capital agreed, for a period of two years after their termination with Expert, not to solicit, acquire, provide services, or interfere in any way with any customers of Expert. Actual and consequential damages are warranted to compensate Expert for the value of the lost PriceRite stores contract, which it would have received but for the tortious conduct of the defendants. The actual and consequential damages are calculable, as contained in the Affidavits[1] filed by plaintiff. PriceRite notified Expert that Expert's services were terminated on May 25, 2011. At that time, the services provided to PriceRite by Expert generated approximately $290,000 in revenue and $83,000 in profits annually. Because the Burns' agreement and the ISP agreement durations were for two years, Expert's damages will be calculated for the same period of time. The affidavits establish that, conservatively, over the next two years, Expert's loss of the PriceRite account resulted in lost revenues of $580,000 and lost profits of $166,000.

27. Although exemplary damages are generally not recoverable for breach of contract, Tennessee law allows for exemplary damages if there is a tortious interference with contract, Tenn. Code Ann. § 47-50-109. "In every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of contract." *Id.* The deliberate collusion to interfere in Expert's business by defendants is an egregious

---

[1] Affidavits establishing damages have been accepted and relied upon by the court when determining damages for a default judgment. *Broadcast Music, Inc. v. Marler,* 2009 WL 3785878 (E.D.Tenn. Nov. 12, 2009).

13

example of malicious, intentional, or reckless tortious conduct, and an award of treble damages is warranted under the facts of this case. Therefore, the court finds that treble damages should to be awarded to Expert for its loss of the PriceRite relationship in the amount of $498,000 ($166,000 damages trebled).

28. Expert has also moved for injunctive relief against defendants enforcing the non-solicitation provisions of the ISP agreement and the non-solicitation and covenant not to compete provisions of the Burns' agreement through May 25, 2013 (the duration of the defendants' two-year non-compete covenants). Since that date has now passed, the court finds plaintiff's request for injunctive relief moot.

29. Expert requests attorney fees incurred as a result of the wrongful conduct of defendants. However, because plaintiff has been awarded treble damages under Tenn. Code Ann. § 47-50-109, the court finds that an award of attorneys' fees would not be appropriate.

## Conclusion

Based upon these findings of fact and conclusions of law, the court will enter judgment in favor of Expert Janitorial, LLC and against Capital Contracting of Buffalo, Robert Doel, and Terry Burns, jointly and severally, in the amount of $498,000.

A judgment order consistent with these findings of fact and conclusions of law will be entered.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge